THE STATE OF KANSAS V. THOMAS PATTON.

No. 15,365.   (92 Pac. 588.)

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Malicious Destruction of Property—Abatement of a Nuisance.* In a prosecution upon a charge of the malicious destruction of property, based upon the act of the defendant in cutting down a telephone pole erected in a public street in front of a lot owned by him, where there is evidence tending to show that the pole was without necessity or reason so placed as to hamper him in the use of his property, and that this inconvenience could have been easily remedied by moving the pole a few feet to a position where it would serve its purpose equally well, it is material error for the court to instruct the jury that no one has a right to destroy the property of another under the claim that it is a nuisance unless it has been declared to be such by some competent authority or by a judicial determination.

Appeal from Russell district court; JAMES H. REEDER, judge. Opinion filed November 9, 1907. Reversed.

*Fred S. Jackson,* attorney-general, for The State.
*George W. Holland,* for appellant.

The opinion of the court was delivered by

MASON, J.: Thomas Patton chopped down a telephone pole which stood in a street in the city of Luray, in front of a lot owned by him. He was prosecuted under a statute making the malicious destruction of

the property of another a misdemeanor (Gen. Stat. 1901, § 2391), and, having been convicted, appeals.

The trial court instructed the jury that no one has the right to destroy the property of another under the claim that it constitutes a nuisance, unless it has been declared to be such by some competent authority or by a judicial determination. This, of course, was incorrect as a general statement, inasmuch as it is familiar law that any one may, without invoking the decision or aid of a court or other public tribunal, abate a private nuisance or a public nuisance from which he sustains a special injury, so that he acts only so far as is necessary for his own protection and does not disturb the public peace. It is hardly necessary to cite authorities in support of this proposition, since its substance is to be found wherever the matter is discussed. The cases bearing on the matter are collected and classified in volume 1 of the American and English Encyclopædia of Law, at pages 79 to 86.

The conviction must therefore be set aside unless it can be said that no prejudice resulted to the defendant from the erroneous instruction. And this depends upon whether there was any evidence that the pole referred to was, as to the defendant, a nuisance. If not, it was proper to instruct the jury that he had no right to cut it down, and that was the effect of the instruction complained of.

The evidence developed that the pole was a part of a telephone system owned by Daniel Walters, which had been constructed before the incorporation of the city; that the city had never granted him the right to maintain the poles in the streets, although the public authorities apparently acquiesced in their remaining there, and no order was ever made for their removal. The defendant contends that although the statute (Gen. Stat. 1901, § 1342) authorizes corporations to place telegraph poles in public roads and streets, no such privilege is granted to individuals, and therefore that the original setting out of the pole in question by

Walters was wrongful; and that at all events its maintenance after the organization of the city could not be lawful until such time as the council should grant him a franchise. Possibly, however, the statute relating to corporations might by a liberal construction be held to apply also to individuals; or it may be that, apart from this statute, as suggested in the specially concurring opinion of Mr. Justice Burch in *McCann v. Telephone Co.*, 69 Kan. 210, 228, 76 Pac. 870, 66 L. R. A. 171, the public highways should be deemed open for reasonable use by telephone and telegraph companies in maintaining their systems of communication, upon the theory that such use is within the general purpose for which roads are created. And if Walters constructed his telephone line along the street at a time when he had a legal right to do so there is room for a plausible argument that he did not become a trespasser by the mere fact of the territory being taken into a city. The attorney-general confesses error and does not resist a reversal. Therefore we have not the advantage of any argument upon these questions excepting that presented in behalf of the defendant. They are of enough importance and difficulty to render it inadvisable to decide them except upon a full presentation. We shall on that account assume for the purposes of the case that Walters had the same rights as though he had been granted a franchise to maintain poles and wires in the streets of Luray.

The defendant attempted to justify his conduct upon the theory that he was privileged to remove the pole merely because it stood in front of his property, inasmuch as Walters had no right to maintain the pole anywhere in the street. The assumption just stated bars a justification upon this ground. But there was testimony from which it might be inferred that he also claimed, and with just cause, that the pole cut off convenient access to his lot from the street by reason of the particular place in which it was planted, and that this inconvenience to him could have been

remedied by moving it a few feet to a position where it would serve the purpose of its owner equally well. This raised an issue for the consideration of the jury. If the pole was, without necessity or reason, so placed as to hamper the defendant in the use of his property, it became as to him a nuisance which he had a right to abate. He was entitled to submit to the jury the question whether that condition existed. The instruction referred to prevented this, and compels a reversal of the judgment.